LYDIA CHAPMAN, and another *vs.* MARGARET R. CHICK.

Waldo. Opinion December 26, 1888.

*Will. Conditional Devise. Election. Estoppel.* "*Rest and Residue.*"

A testator, having made pecuniary bequests to his immediate heirs and some others, gave to his wife certain personal property and $2,500.00 outright, and the use and occupation of his homestead during her lifetime or widowhood, and provided that she could take the $2,500.00 out of any of his property, real or personal, at the appraisal, at her election. He declares that his bequests are made on the basis of an estate of $4,750.00, and that certain of them, including that to his wife, shall be increased correspondingly with the total net estate which on final settlement may prove to have been left by him. The whole estate, which much exceeded the sum named, was distributed by the executor, the widow taking all the real estate, at the appraisal, towards her share, and retaining possession, for a long lifetime afterwards, of all the same, excepting the homestead which she conveyed away by her deed of warranty.

The heirs received their increased legacies according to the will, there being no residuary clause. *Held*, on these and other less important facts, that the title to the real estate vested in the widow.

Real estate passes under a clause in a will, giving and devising all the rest and residue of the testator's property and estate of every description, and wherever situate, after the payment of all debts and certain legacies named, unless such construction be prevented by the other parts of the will.

ON REPORT, upon agreed statement.

Writ of entry to recover two undivided third parts of the Atwood block in Winterport.

It was admitted that Nathaniel Atwood died in December, 1858, seized of the demanded premises, and that the plaintiffs and defendant are his legal heirs, entitled equally to his undevised real estate, if any.

Defendant claims under the will of Lydia Atwood, widow of Nathaniel, also under his will.

It was also admitted that the widow conveyed away by warranty deed, September 15, 1859, the homestead named in the will of her husband, and continued in the possession and control of the demanded premises, from his death until her decease in 1882, exercising all the rights of ownership.

The material portions of the two wills, which came under construction by the court, appear in the opinion.

*Rice and Hall*, for demandants.

1.  Nathaniel Atwood's will gives no authority to the executor to convert real estate into personalty, nor to convey it, and, unless conveyed by the will itself, which defendant does not contend, no title can pass but the real estate descended to the heirs, as the demandants claim.

2.  As the defendant says : there is no provision that either of the persons named in the will, except the wife Lydia Atwood, in any event should have any portion of, or interest in, the real estate ; in other words, except for the life interest in the homestead and the option the widow had to select portions of the real estate as part of her $2500, (which she exercised by her deed in respect to the portion which she chose) the real estate was undevised, as the demandants claim, and two thirds descend to them

and has never been taken from them by any process known to the law.

3. No executor has a right to distribute real estate, unless by authority conferred by the will, or by authority of the court;—in either case, only by deed. No such authority exists, or is claimed in this case, and no deed from him as executor, or otherwise, to the defendant, of the demanded premises can be produced. No title has passed to her, therefore, except to the one third to which she is entitled as heir, as the demandants are to the remaining two thirds of the undevised real estate. The title to real estate of no person, least of all of a minor, can be affected by any so-called distribution or settlement of accounts of personalty by an executor.

4. The acts of ownership exercised by Mrs. Atwood and admitted in the agreed statement, were such acts as she was authorized by the will to exercise, everything being left to her care and control during her life. But the exercise of her option to take real estate as part of her legacy or bequest as her own, was used but once; by her sale of the homestead. No act of ownership inconsistent with this has been admitted.

Counsel for defendant says, "having elected to receive their shares of real estate in the form of legacies, they are estopped from claiming a share in the real estate itself."

When did they so elect? Never.

What evidence is there of such election? None.

The administrator in the settlement of his account shows a payment to Mrs. Clark, one of the demandants, of a certain sum of money. She was entitled to a sum of money from the personal estate under the will more or less, according to the amount of personal property left by the testator; she made no election and her claim to her share of the real estate cannot be defeated by any illegal act of the administrator. The other demandant, Mrs. Chapman, appears to have been a minor. Her guardian or trustee, who was one of three named in the will to act for minors, was paid a certain sum by the administrator, as appears by the account of the administrator. There is no other evidence of any payment to Mrs. Chapman, or in her behalf. As Rich was but

one of three trustees who were to receive her legacy, and could not act alone, the burden is upon the defendant to show that Mrs. Chapman has received her share of the demanded premises. Certainly the evidence produced does not show it. There is, in fact, no evidence presented by the defendant upon that vital point in the case.

It is respectfully submitted that her title to the demanded premises cannot be defeated by this payment to Rich.

Counsel further argued that the demanded premises did not pass to the defendant, as the residuary legatee, under the will of Lydia Atwood.

No mention whatever is made in her will of any real estate. There is not a word in the will by which it can be inferred that Lydia Atwood claimed to own a particle of real estate when she made this will—but the careful exclusion of any mention of real estate furnishes a strong presumption at least, that the testatrix did not claim to own any—or, at least, did not intend to devise any. If she did in fact own any real estate, the terms of the residuary clause are too vague to carry real estate to the disinherison of the heirs who are the demandants and the defendant in equal shares. Heirs are not to be disinherited by conjecture.

Counsel cited: 3 Jarm. Wills, 5th Am. Ed. p. 428, note and cases there cited. *Bullard* v. *Goffe*, 20 Pick. 252; *Howard* v. *Am. Peace Society*, 49 Maine, 288; *Baillis* v. *Gale*, 2 Vesey, sen., 51; *Davis* v. *Gardiner*, 2 P. Wms. 187, cited in Jar. Wills, (edition *supra*) p. 423; *Trimwell* v. *Perkins*, 2 Atk. 102; *Doe* v. *Rout*, 7 Taunt. 79; *Wright* v. *Hicks*, 12 Georg. 155; *Boisseau* v. *Aldridges*, 5 Leigh. 222; *Blackman* v. *Gordon*, 2 Rich. Eq., (So. Car.) 43; *Fisk* v. *Cushman*, 6 Cush. 20.

*W. H. Fogler*, for defendant.

1. Counsel contended that the demanded premises passed to defendant under the will of her mother who acquired title by the will of her husband, and cited: 2 Redf. Wills, 3d ed., p. 126, § 21; Ib. p. 308, § 1; Ib. p. 311, § 2; *Bullard* v. *Goffe*, 20 Pick. 252, 256; *Dewey* v. *Morgan*, 18 Pick. 295.

2. This brings us to an examination of the will of Nathaniel Atwood,—under whom the demandants claim to hold as heirs.

It is contended in behalf of the defendant,

*First:* The demandants can not hold as heirs of Nathaniel Atwood because he left no undivided estate, real or personal, his will providing for a disposition of all his estate;

*Second:* The demandants have no title as devisees under said will, because they are named as legatees of the testator, each entitled to her legacy in money, and the will contains no words indicating any intention of the testator to give them any interest in his real estate;

*Third:* The demandants, as legatees, under said will, have received their full share of all the estate, real and personal, of which said Atwood was seized or possessed at the time of his decease; they are estopped from claiming a share in the real estate itself;

*Fourth:* The demanded real estate, by the terms of said will, passed to the testator's widow, Lydia Atwood, and from her, by will to the defendant.

Counsel cited: 2 Williams, Exec., (6th Am. Ed.) 1455; 2 Redf. Wills, p. 116, § 5; Schoul. Wills, §§ 490, 561; *Wilbar* v. *Smith*, 5 Allen, 194; R. S., c. 74, § 2; *Duke of Devonshire* v. *Lord George Cavendish*, cited and quoted in *Griffith* v. *Harrison*, 4 T. R. 737, 743.

If, however, the court shall be of opinion that if by any informality or omission the legal title failed to vest in Lydia Atwood, the fact that she actually took the demanded premises as a part of her share in her husband's estate would clothe her with an equitable title; and the demandants, if they have any legal title, hold such legal title in trust for the defendant, the devisee of Mrs. Atwood.

Being in such case mere passive trustees, they cannot maintain a writ of entry against the defendant.

*Sawyer* v. *Skowhegan*, 57 Maine, 500; *Craig* v. *Franklin Co.*, 58 Maine, 479.

PETERS, C. J. The demandants and defendant are heirs at law of Nathaniel Atwood, deceased, and entitled to any undevised real estate left by him, the demandants to two-thirds and

the defendant to òne-third thereof. The question is whether any undevised real estate was left by Nathaniel Atwood. He died in 1858, leaving a will, in which, after some minor bequests to distant relatives, he gives his wife Lydia certain personal property and twenty-five hundred dollars outright, and the use and occupation of the homestead for her life time or during widowhood. He provides that the twenty-five hundred dollars may be taken by the widow from any of his estate real or personal at the appraisal thereof, at her election.

He then gives, among bequests to others $500.00 to a daughter, one of the demandants, and $250.00 to a granddaughter, the other demandant, and declares that all his bequests are based upon the assumption that his net estate will amount to the sum of $4,750.00. He further declares that, if his estate should turn out to be more than that amount, certain of the bequests, including those to the widow and the persons who are the parties to the present action, shall be increased (relatively with each other) proportionally with the total estate left by him.

The estate much exceeded the sum named, there being real estate of the appraised value of $3,335.00 and personal estate appraised at the value of $11,197.99, total values being $14,532.99. So that the widow's portion became enlarged to $8,036.73, and the portions of the demandants were increased from the sums of $500.00 and $250.00 to the sums of $1,600.00 and $800.00, upon the basis that all the estate was converted into or settled as personal property. Each demandant, and all other legatees except the widow, received in money the portions they were thus entitled to. The widow received possession of the balance of the property, consisting of the real estate, $3,335.00 in value, about $5,700.00 in money or its equivalent. The accounts show a small discrepancy, probably from not noticing a pew, used in common by the heirs, in the calculations.

The demandants now occupy a position of hostility against this construction and settlement of the will, contending that no real estate was devised, or intended to be, beyond the use and occupation of the homestead, and that the bequests were a charge on the personal property only. They admit, however, that the

widow might have taken her $2,500.00 in real estate, but contend that she never elected to do so.

We think that the will, evidently written by an unskillful hand, and without doubt by the testator, was intended to make a disposition of all the testator's property, real as well as personal. The tests of intention all, or nearly all, point unmistakably that way. There is no residuary clause to catch up anything not otherwise disposed of, and still the mind of the testator was evidently bent upon a purpose of making full and final dispositions. In fact it would not be a misnomer to call the provision increasing certain legacies according to the amount of the estate, a residuary clause. It operates as such. The $2,500.00 could be taken from the "estate real or personal," to go "to her and her heirs forever." He provides for a contingency that his previous advancements to a child might exceed the proportion coming to it "on the final settlement of my (his) estate." The legacies were to increase correspondingly "with my (his) estate." He names men to appraise his "property and estate." He enjoins upon his heirs to see that his estate is amicably settled "according to the provisions of this will." He expresses the hope that his heirs, to all of whom he made bequests, and to some of them he had made advancements, would not be ungrateful, but would be satisfied with his testamentary doings.

It is evident enough that he had in mind no definite distinction between real and personal estate. Nor did his executor have, who rendered his accounts as if there were no distinction, acting on the idea and meaning of the testator.

We have said that the demandants contend that the widow made no election to accept real estate in satisfaction of her portion. We think she did. She went into possession of all the realty and kept possession, at an earlier date by herself, and later by her guardian, until her death in 1882. She enjoyed the rents and profits and paid the taxes and repairs for over a quarter of a century, without opposition or adverse claim from any one. In 1859, she conveyed away a part of the real estate, the homestead, as if her own, by a warranty deed. If she did not accept the real estate in satisfaction of her portion, she never received her

portion. No sale of the land was made either by heirs or executor. The title to the land came to her by the will.

The general rule as stated by Mr. Bigelow on the point of election, in his last work on estoppel, p. 566, is applicable, and is as follows : "In regard to the question what constitutes an election, it is held in general that one who takes possession of property under a will and holds and manages it for a long time, and especially if he sell the whole or part of it, will be considered as making a binding election to accept that property under the terms of the will." Another principle stated by the same author, at p. 562, hits at the position upon which the demandants now place their claim. He says, "The most familiar example of this kind of estoppel is found in the case of wills. It is an old rule of equity that one who has taken a beneficial interest under a will, is thereby held to have confirmed and ratified every other part of the will, and he will not be permitted to set up any right or claim of his own, however legal and well founded it may otherwise have been, which would defeat or in any way prevent the full operation of the will." If the real estate was not devised by the will, the demandants have received more than the testator intended they should. We feel strongly the belief that the real estate was conditionally devised, and that the acts of the widow turned it into an absolute and completed devise. It is argued, on the demandants' side, that a circumstance indicating no intention to devise realty, is found in the clause of the will giving use and occupation of the homestead for life or widowhood, and allowing the widow to prevent any division of the property while she lived. That does not militate against the views we have expressed. It is rather in aid of them. If the widow should not elect to do so, then the other provisions would prevail.

The demandants next take the position that, if disentitled under their father to claim two thirds of the estate demanded, they are still entitled to the same as heirs of their mother, under the claim set up by them that their mother's will, under which the defendant claims the land as a devisee, does not devise any real estate. The mother, Lydia Atwood, after some small bequests, makes in her will this final provision : "I give and devise to my

daughter Margaret R. Chick (this defendant), all the rest and residue of my property and estate of every description and wherever situate, after the payment of my debts and the foregoing legacies, to have and to hold the same to her and her heirs forever." This is comprehensive and clear. There can be no doubt the intention was to include all real as well as personal property. Effective expressions are employed. She gives and "devises"—"all the rest and residue"—of her property and "estate"—of "every description"—"wherever situate"—to hold to her "and her heirs" forever.

There being nothing in other portions of the will expressing or implying anything to the contrary, she must have intended, by a general description, to cover all the property she had in the world after satisfying previous bequests. The word estate may include real as well as personal. The same may be said of the word property. In ancient cases either of the words was supposed to be used in a restricted sense. But in modern construction the popular signification is allowed to prevail. Whether the words are used in the wide or narrow sense, must depend on other words associated with them and the general context of the will. The word possessions is allowed the same scope of meaning. Schoul. Wills, § 510, and cases. *Blaisdell* v. *Hight*, 69 Maine, 306, and cases. In *Smyth* v. *Smyth*, 8 Chan. Div. 561, it was held that a freehold estate passed by force of the words, "all the rest and residue." Many kindred cases are there cited and commented upon.

*Demandants nonsuit.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.